IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEVEN CLAY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:23-cv-00565-RAH |
| | ) | [WO] |
| KINSALE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Plaintiff Steven Clay's *First Motion to Quash Objection to Deposition Notice of Rick Williams* (doc. 60) filed on January 20, 2025. The motion is fully briefed and ripe for decision. The Court grants the motion in part.

### Background

This is a direct action brought by Plaintiff Steven Clay under Alabama Code § 27-23-2 against Kinsale Insurance Company to obtain indemnity/benefits under a commercial liability insurance policy issued by Kinsale to The Yu Bar and Grill, Inc. ("Yu Bar"). Clay previously sued Yu Bar in the Circuit Court of Montgomery County, Alabama after Clay was injured when Yu Bar security moved through the bar to address an altercation of some sort between patrons at another place in the bar. Clay was not involved in the altercation but instead was a patron and innocent bystander.

Yu Bar tendered the defense to Kinsale, but Kinsale denied a defense to Yu Bar based on an assault and battery exclusion contained in the Kinsale insurance policy. Subsequent efforts by Clay and Yu Bar to trigger coverage were unsuccessful.

Attorney Rickman Williams represented Clay in the state court action, and Yu Bar was represented by attorneys Preston Presley and Wesley Pitters. Over the course of the underlying case, there was written correspondence, email correspondence, and other communications between Williams, Presley, and Pitters. Ultimately, the attorneys discussed and agreed upon a Consent Judgment to be filed in the case. Purportedly, Williams drafted the Consent Judgment, and at some point, it was presented to the state court for issuance. The state court entered the Consent Judgment, although no evidence was presented to the court nor was the case tried to a jury or the court. In that Consent Judgment, the state court entered a judgment for $750,000 against Yu Bar based on Yu Bar's "negligence," and the court made an express finding that the judgment "is not in any way based upon, connected to, does not arise out of, relate to, or in any way involve any actual or alleged assault or battery, harmful or offensive contact or threat." (Doc. 12-2 at 1.)

After the Consent Judgment was entered, Clay sought to collect on the judgment from Kinsale. With his informal efforts being unsuccessful, Clay filed this direct action against Kinsale, as permitted under Alabama's direct-action statute, Alabama Code § 27-23-2. Kinsale has defended the case, asserting lack of good faith (i.e., collusion between Clay and Yu Bar) and the unreasonableness of the judgment. (*See* doc. 11 at 2.)

On January 14, 2025, Kinsale noticed the deposition of Williams, Clay's state court counsel who also represents Clay in this direct action against Kinsale. (Doc. 60-1.) According to Kinsale, Williams' testimony is relevant and necessary because Williams drafted the Consent Judgment, including the $750,000 judgment amount, the language about the judgment amount, negligence, and disclaimer, and had extensive communications with Yu Bar's counsel. Kinsale claims this testimony is relevant because it goes to the issue of reasonableness and good faith/collusion, which are key issues in this direct action against Kinsale. *See Ex parte Emps. Mut.*

2

*Cas. Co., Inc.*, 845 So. 2d 773, 776–77 (Ala. 2002) (explaining that fraud and collusion are affirmative defenses available against coverage of a consent judgment); *Ala. Gas Corp. v. Travelers Cas. & Sur. Co.*, 990 F. Supp. 2d 1163, 1168 (N.D. Ala. 2013) (explaining that under Alabama law an indemnitee "has the burden of establishing that . . . the settlement was a reasonable one" and regardless of whether the indemnitor had notice of the claim or settlement, the indemnitor is "bound by any good faith and reasonable settlement" (relying on *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co.*, 851 So. 2d 466, 476 (Ala. 2002), and *Watts v. Talladega Fed. Sav. & Loan Ass'n*, 445 So. 2d 316, 320 (Ala. Civ. App. 1984))), *aff'd*, 568 F. App'x 837 (11th Cir. 2014).

On January 20, 2025, Clay filed an objection and motion to quash the deposition notice, (doc. 60), asserting the attorney-client privilege and work product doctrine. Clay further states the Court should follow the logic in *Simmons v. Sejong Alabama LLC*, No. 2:19-CV-629, 2020 WL 13016468, at *3–4 (M.D. Ala. Dec. 23, 2020), in which the district court noted that compelling a party's attorney to testify as a witness is discouraged and that it disrupts the adversarial nature of the judicial system. Clay further argues that he is willing to have Williams answer interrogatories.

### Discussion

The Court grants the objection/motion to quash in part. First, the Court concludes that *Simmons*, 2020 WL 13016468, at *3–4, provides little guidance here. Williams' deposition is being sought not because of his role as an attorney in this federal case, but instead in his role in the underlying case as it concerns the discussions with Yu Bar's counsel about liability, amended complaints, defense and indemnification from Kinsale, a consent judgment, and insurance coverage. Those issues have direct implication on issues in this case—which Clay injected and brought to the forefront through this direct action against Kinsale—concerning good

faith/collusion and reasonableness of the Consent Judgment. Only Williams, Presley, and Pitters can speak to those issues. As such, Williams is a key witness. And his communications with Presley and Pitters, who were attorneys representing adverse parties, are not subject to any sort of privilege. That Williams is an attorney of record in this federal case does not shield him from sitting for a deposition concerning the facts and circumstances in the *underlying* case. If Williams' testimony was being sought for events occurring in this federal case, Clay's objections would have much more merit. *See Simmons*, 2020 WL 13016468, at *3 (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)) (listing reasons against allowing depositions of opposing counsel that go directly to the attorney's time spent on the case at hand and the client's comfort in his ability to communicate truthfully with his attorney). But Williams' testimony is not being sought because of his actions and communications in *this* case.

Arguably, piercing questions about the "whys" of the Consent Judgment amount and its reasonableness—and the insertion of certain language that is directed to minimizing application of the assault and battery exclusion—implicate attorney work product and mental impression issues. However, Clay has made the Consent Judgment, its drafting, its contents, and the reasonableness of the $750,000 judgment amount a *direct* issue in this case. After all, Clay filed this lawsuit and bears the burden of showing that the Consent Judgment was reasonable. *See Liberty Mut. Ins. Co.*, 851 So. 2d at 476; *Ala. Gas Corp.*, 990 F. Supp. 2d at 1168. Therefore, and because he injected these issues in this case, Clay has implicitly waived any privilege to those issues. *See Ex parte State Farm Fire & Cas. Co.*, 794 So. 2d 368, 376 (Ala. 2001) ("[A] party . . . implicitly waive[s] the attorney-client privilege . . . [when] the actual content of the attorney-client communication has been placed in issue in such a way that the information is actually required for the truthful resolution of the issues raised in the controversy." (alteration adopted) (internal quotations and citation

4

omitted)); *Vakili v. First Com. Bank*, No. 2:08-CV-276, 2009 WL 10670046, at *4 (N.D. Ala. May 21, 2009) (finding that where the plaintiffs "asserted their counsel's actions as a defense to the . . . [d]efendant's fraudulent transfer counterclaim[,]" the "defense amounts to an indirect waiver of attorney-client privilege" because "the issue was injected into the case by the party which enjoys its protection" (alteration adopted and internal quotations omitted) (citing *Ex parte Meadowbrook Ins., Inc.*, 987 So. 2d 540, 550 (Ala. 2007)). [1]

Clay argues that answering interrogatories should be sufficient for Kinsale to obtain the testimony it needs. And considering whether there is an alternative means for the information is a pertinent consideration. *See Ex parte Indus. Dev. Bd. of City of Montgomery*, 42 So. 3d 699, 718 (Ala. 2010) (granting writ and directing trial court to vacate its order denying defendant's motion for a protective order to prevent the plaintiff from deposing defense counsel where the defendant showed that there were alternative means of obtaining the desired information); *see also id.* at 712–13 (explaining the non-exhaustive factors found in *Shelton*, 805 F.2d 1323, assist when a party attempts to prevent the deposition of counsel: that party may show (1) there are other means to obtain the information sought; (2) "the information sought is privileged or is not relevant; or (3) that the information sought is not crucial to the preparation of the case"). However, the Court believes that interrogatories will only spur additional objections and discovery disputes and is not a productive and efficient way to obtain this relevant information given the history so far in this case. The Court notes that Clay's responses to various interrogatories have been provided to the Court for review, and those interrogatories were met with objections and vague

---

[1] "State law governs the application of attorney-client privilege in civil matters." *Ellis v. Chambers*, No. 21-13984, 2022 WL 17752231, at *9 n.10 (11th Cir. Dec. 19, 2022) (per curiam) (citing Fed. R. Evid. 501).

responses. (*See* doc. 82-1.)  The Court has little doubt that similar responses would be provided if Kinsale was limited to interrogatories.

Clay also argues that Williams' communications with him are subject to the attorney client privilege.  And that is generally true.  At the hearing, counsel for Kinsale assured the Court that they do not intend to question Williams about his communications with Clay.  As such, the Court sustains the objection and Clay's motion to the extent it relates to communications between Williams and Clay. That is not to say that Clay's legal positions and arguments in this case may not later result in an implied waiver of the privilege.  *See Ex parte State Farm Fire & Cas. Co.*, 794 So. 2d at 376.  But that is a different issue for another day.

## CONCLUSION

For the reasons stated above, and for good cause, the Motion to Quash (doc. 60) is **DENIED** in part.  Accordingly, Attorney Rickman Williams shall sit for a deposition and shall give testimony on the following areas:

(1) His oral, written, and electronic communications with Preston Presley, Wesley Pitters, Kinsale Insurance Company and its attorneys, and the court in the state court action;

(2) Whether, when, and how the Complaint, Amended Complaint, and Second Amended Complaint in the underlying case were tendered to Kinsale for a defense and indemnification in the underlying lawsuit; and

(3) The Consent Judgment and its contents, including the drafting of the Consent Judgment, the judgment amount, the reasonableness of the judgment amount, and the inclusion of certain language in the Consent Judgment directed to negligence and assault and battery.

The motion (doc. 60) is **GRANTED** in all other respects, including in that Attorney Rickman Williams is not obligated to give testimony concerning his

communications with Steven Clay, any of Clay's current or former attorneys, or any of Williams' actions, inactions, work product, and mental impressions in the federal case.

      **DONE** and **ORDERED** on this the 11th day of April 2025.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE